IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT BREWER AND** : | |
| **JENNIFER BREWER,** : | |
|     **Plaintiffs,** : | |
| : | |
|     v. : | NO. 22-CV-4505 |
| : | |
| **TROY-BILT LLC et al.,** : | |
|     **Defendants.** : | |

### MEMORANDUM

**KENNEY, J.**                                                                                              **OCTOBER 31, 2023**

### I.   INTRODUCTION

Plaintiff Robert Brewer was injured when he placed his hand in the blades of a snow thrower he believed to be turned off, suffering injuries to his middle finger. Mr. Brewer and his wife, Jennifer Brewer (collectively, "Plaintiffs") sued Troy-Bilt LLC, MTD Products Inc., and MTD Products Co., (collectively, "Defendants"), the manufacturer of the snow thrower and related entities, alleging, *inter alia*, that they failed to provide adequate warnings as to the nature of the product. Defendants have moved for summary judgment, which Plaintiffs opposed.

### II.   BACKGROUND AND PROCEDURAL POSTURE

Mr. Brewer purchased a Troy-Bilt Storm 2410 snow thrower, a product analogous to a lawn mower, but meant to clear snow. *See* ECF No. 24-1, Statement of Material Facts ("SMF") ¶¶ 1, 14; ECF No. 27-1, Response to Statement of Material Facts ("RSMF") ¶¶ 1, 14. The product has two sets of internal blades. SMF ¶ 3. A set of auger blades at the bottom-front of the machine gathers snow and moves it into the impeller housing. SMF ¶ 3; RSMF ¶ 3. Then, a set of impeller blades rotate and "throw" the snow out of a discharge chute. SMF ¶ 3; RSMF ¶ 3.

1

The snow thrower's engine can be turned on in two ways. According to the product's manual, both methods require the key to first be placed in the ignition. *See* ECF No. 24-5 at 12. Once the key is in the ignition, the engine can be activated either by pulling a pull cord, or via an electronic start button if the snow thrower is plugged in. SMF ¶ 6; RSMF ¶ 6. To start or continue running the engine requires a spark from a spark plug or other ignition source with sufficient energy. SMF ¶ 7; RSMF ¶ 13. Once the engine is running, the user must engage a specific lever on the machine to turn on the snow thrower's blade systems. SMF ¶ 4; RSMF ¶ 4. As designed, there are two ways to turn off the snow thrower. SMF ¶ 8; RSMF ¶ 8. Either the user can slide the throttle control lever into its STOP position, or the user can remove the ignition key. SMF ¶ 10; RSMF ¶ 10. According to the product's manual, once the user either slides the control lever to STOP or removes the ignition key, the snow thrower should be impossible to turn on and should stop running because the possibility of a spark is removed. SMF ¶ 8, 11-12; RSMF ¶ 8, 11-12.

The snow thrower's manual contains several warnings, including warnings to stop the engine and blades before leaving the operating position, and to remove the key while the snow thrower is not in use. ECF No. 27-2 ("Brewer Dep.") at 92:9-18, 101:4-18. There are also several warnings on the machine itself, including warnings to keep hands and feet away from the blades and discharge chute, and warnings to shut off the engine before using the clean-out tool to clear a clog. *See* ECF No. 24-6 at 5.

Mr. Brewer had purchased this product in 2010 and used it approximately 40 to 60 times without major incident. SMF ¶¶ 14, 18; RSMF ¶¶ 14, 18. Although the snow thrower would sometimes get clogged, the product contained a clean-out tool meant to be inserted into the blades in order to clear clogs, which Mr. Brewer stated happened on occasion. Brewer Dep. 35:13-36:19. Mr. Brewer alleged that on February 18, 2021, he was using the machine in his typical manner

when it clogged. *Id.* at 48:18-49:6. To clear the clog, Mr. Brewer turned off the blades and powered down the machine by moving the throttle to the STOP position. *Id.* He then used the clean-out tool to begin clearing out the clog, but it would not fully clear the clog. *Id.* at 54:15-56:22. As a result, he inserted his hand in the discharge chute to continue clearing the clog, when he alleges that the machine spontaneously started and the blades began to rotate, injuring his middle finger. *Id.* at 62:4-67:9. The injury required two surgeries. *Id.* at 17:9-22.

Plaintiffs brought this action under two separate theories. First, that the product was defectively designed such that it could spontaneously start even while it was turned off via the throttle control, and second, that there were not adequate warnings on the machine itself alerting him to the danger of cleaning a clog without removing the ignition key. *See generally*, ECF No. 1.

Plaintiffs did not respond to the portion of Defendants' motion for summary judgment addressing his product defect claim, and therefore Counts I and III, which asserted that claim, are abandoned. *See Alexander v. Tutor Perini Corp.*, No. 16-0546, 2017 WL 4159338 at *5 (E.D. Pa. Sept. 14, 2017) (deeming a claim abandoned when plaintiff did not address it in his opposition to defendants' summary judgment motion) (citing *Glenn v. Raymour & Flanigan*, 832 F.Supp.2d 539, 547 (E.D. Pa. 2011)); *see also Seals v. City of Lancaster*, 553 F.Supp.2d 427, 432 (E.D. Pa. 2008) ("plaintiff's failure to mention these issues in her summary judgment response constitutes abandonment of those claims."). Indeed, Plaintiffs state in their brief that "[t]his case amounts to a 'failure to warn' product liability case," appearing to explicitly abandon their defect claims. ECF No. 27 at 8.

In support of his sole remaining claim under a failure to warn theory, Plaintiffs put forth an expert, Dr. Michael Stichter, who opined that defendants could easily and inexpensively place a warning on the machine instructing users to remove the ignition key before clearing clogs. ECF

3

No. 27-3 at 9. This opinion is based on plaintiffs' underlying theory that the snow thrower can spontaneously start if the throttle control is turned to the "STOP" position, but not if the ignition key is removed. *See* ECF No. 27-4 at 2-3. Defendants maintain that it is impossible for the machine to spontaneously start if the throttle control is turned to "STOP" or if the ignition key is removed. See ECF No. 24-2 at 5; SMF ¶¶ 10-12. Defendants moved for summary judgment (ECF No. 24) and exclusion of Dr. Stichter (ECF No. 23), which Plaintiffs opposed (ECF Nos. 26, 27). These motions are ripe for review.

### III.    STANDARD OF REVIEW

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Indeed, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this

burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. The non-movant opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

When determining the existence of a genuine issue of material fact, a court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## IV. DISCUSSION

Under governing law, a product can be defective if the manufacturer fails to provide adequate warnings as to how to use the product safely. *See Mackowick v. Westinghouse Elec. Corp.*, 575 A.2d 100, 102 (Pa. 1990) ("It is well settled a dangerous product can be considered 'defective' for strict liability purposes if it is distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product.") (citations omitted). A product that fails to provide an adequate warning is defective for strict liability purposes if "a warning of a particular danger was either inadequate or altogether lacking, and…this deficiency in warning made the product unreasonably dangerous." *Phillips v. A-Best Products Co.*, 665 A.2d 1167, 1171 (Pa. 1995). The plaintiff fulfills the second element by "demonstrat[ing] that the user of the product would have avoided the risk had he or she been warned by the seller." *Id.* The determination of whether an inadequate warning would "render a product 'unreasonably dangerous' is a question of law to be decided by a trial judge." *Id.* at 1171 n.5.

Plaintiffs, supported by their expert, argue that the existing warnings were inadequate, and that there should have been a warning on the machine itself instructing users not to clear clogs unless the key was removed from the ignition. ECF No. 27 at 9-10. Plaintiffs acknowledge that there was such a warning in the manual, but insist that the placement of the warning is critical, and that it needs to be on the machine in order to be legally sufficient. *Id.*

In pressing this argument, Plaintiffs ignore an even more critical warning that *was* on the machine: not to place one's hands in the discharge chute. *See* ECF No. 24-6 at 5. Mr. Brewer does not dispute that he knew about this warning and disregarded it. Brewer Dep. at 102:23-103:20. Yet Plaintiffs seek an *additional* warning that would have instructed Mr. Brewer to make sure the machine was fully powered down by removing the ignition key before disregarding the existing warnings and putting his hand in the discharge chute.

*Davis v. Berwind Corp.* is almost directly on point. 690 A.2d 186 (Pa. 1997). There, an employee at a meatpacking company ignored warnings to keep her hands out of a meat blender and placed her hands in the blender when she thought it was turned off. *Id.* at 188. The machine began running while her hands were in the blender and severed three of her fingers. *Id.* Despite the fact that the company had removed a safety device that would have prevented the employee's injury, the Pennsylvania Supreme Court still found against the employee, reasoning that the employee erroneously "characterize[ed] the danger as being the continued rotation of the blades of the meat blender after the power had been turned off. Instead, *the danger to be cautioned against is the placement of the operator's hand at any position near the blades*." *Id*. at 190 (emphasis added). The employee in *Davis* was effectively requesting that the court "require a manufacturer to warn against dangers that may arise if the stated warnings are not heeded." *Id.* This request was deemed "unreasonable and unwarranted since the law presumes that warnings will be obeyed." *Id.*; *see Baldino v. Castagna*, 478 A.2d 807 (Pa. 1984) ("'Where warning is given the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for its use if it is followed, is not in defective condition nor is it unreasonably dangerous.'") (quoting Restatement (Second) of Torts § 402A cmt. j).

This same fact pattern has recurred, and Pennsylvania courts have come to the same result each time. For example, in *Zimmerman v. Baker-Perkins, Inc.* an individual also placed his hands into an industrial mixer that he believed was off, sustaining injury, and requesting additional warnings of the danger on the machine. 707 F.Supp. 778, 779-80 (E.D. Pa. 1989). The court found against plaintiff there too, on the basis that he personally read the manual and was aware of the warning not to put his hands in the mixer and did so anyway. *Id.* Additionally, in *Robinson v. Delta International Machinery Corp.*, plaintiff requested additional warnings as to the danger of

7

performing the particular cut that injured him after he attempted a free hand cut with a table saw despite warnings that a free hand cut was dangerous. 274 F.R.D. 518, 521-524 (E.D. Pa. 2011). The court granted summary judgment on plaintiff's failure to warn claim reasoning that "if plaintiff had heeded the warnings that were actually included on the saw and in the manual he would not have been injured." *Id.* at 523. *See also Makadji v. GPI Div. of Harmony Enter., Inc.*, No. 05-3044, 2006 WL 3498324 at *1-3 (E.D. Pa. Dec. 1, 2006) (granting summary judgment where plaintiff ignored a warning to keep hands out of a trash compactor and requested a more detailed warning); *Roudabush v. Rondo, Inc.*, No. 3:15-cv-059, 2017 WL 3912370 at *7 (W.D. Pa. Sept. 5, 2017) (same where plaintiff was injured when disregarding warnings not to place hands in machine and requested more prominent and detailed instructions).

With this background, the primary material fact in this case is whether there was a sufficiently prominent warning not to place one's hands in the discharge chute.[1] There is no dispute that these warnings were contained in both the manual and on the machine, and that Mr. Brewer was aware of them. For example, Mr. Brewer acknowledges that the following warnings were in the manual: "Do not put hands or feet near rotating parts in the auger, slash, impeller housing or chute assembly. Contact with the rotating parts can amputate hands or feet," Brewer Dep. 90:6-11, "Never put [your] hand in the discharge chute or collector openings. Always use the clean out tool provided to unclog the discharge opening," *id.* at 92:23-93:5, "Never use your hand to clean out the discharge chute," *id.* at 94:11-12, and "Warning, never use your hands to clear a clogged chute assembly." *Id.* at 102:23-103:1. On the machine itself, Mr. Brewer concedes that there was a warning stating: "Never put hand in chute. Contact with rotating parts can amputate finger and

---

[1] In many of the cases cited above, courts granted summary judgment even where the warning was in the manual and not on the machine. In this case, it is not necessary to consider whether the warning would have been sufficient if it was just in the manual, since the relevant warning was indisputably on the machine. *See* ECF No. 27-3 at 5, Figure 3.

hands," as well as an illustration conveying the same message accompanied by the word "danger." *Id.* at 123:4-24. *See also* ECF No. 27-3 at 5, Figure 3 (providing a photograph of the warnings on Mr. Brewer's snow thrower).

In his deposition, Mr. Brewer repeated several times that he "followed the instructions on the machine" rather than the manual. Brewer Dep. 86:13. *See also id.* at 86:6 ("I followed what is written on the machine."). Mr. Brewer also attempted to mischaracterize the relevant warnings, implying that they only cautioned against placing one's hand in the discharge chute while the machine was running. *See, e.g.*, Brewer Dep. at 102:23-103:19 (Mr. Brewer construing a warning to "*never* use your hands to clear a clogged chute assembly" as "*if the machine is on*, to not put your hand in the chute") (all emphasis added), *id.* at 92:23-93:14 (Mr. Brewer reviewing a warning to "Never put [your] hand in the discharge chute" and concluding that "[he] wouldn't think [he] wouldn't be able to put [his] hand…in the machine if the machine is off."). As is clear from Mr. Brewer's testimony and photographs of the snow thrower, the warnings do not contain any qualification, and instead plainly indicate that one should not place their hands in the discharge chute at any time. Mr. Brewer himself acknowledges that despite his misreading of the relevant warnings, they do not contain any qualification that permit placing hands in the discharge chute if the machine is turned off. *See e.g.*, Brewer Dep. 94:5-95:9.

Thus, the only material facts are whether the snow thrower contained a warning not to place one's hand in the discharge chute, and whether Mr. Brewer would have avoided that risk had he been aware of that warning. Even drawing all inferences in Mr. Brewer's favor, the record evidence establishes that there was such a warning on the machine itself, which Mr. Brewer conceded he was aware of, and that Mr. Brewer nevertheless disregarded that warning by placing his hands in the chute.

Plaintiffs' expert finds that the danger could have been avoided with a cost-effective remedy, namely putting a warning on the machine to remove the key from the ignition before clearing the discharge chute.[2] ECF No. 27-3 at 9. Dr. Stichter's underlying theory is that the snow thrower is capable of a spontaneous start if the throttle control switch is turned to STOP, but not if the ignition key is removed. *See* ECF No. 27-4 at 2-3. Since Defendants contend that it is impossible for the machine to spontaneously start even if the ignition switch is turned off, Plaintiffs assert that there remains a genuine dispute of material fact. Plaintiffs are incorrect. The possibility of a spontaneous start, no matter the circumstances, is not material to this case since Mr. Brewer would not have been harmed by a spontaneous start *had he obeyed the existing warnings not to place his hands in the discharge chute at any time*.[3] Even assuming a manufacturer was aware of the possibility of a spontaneous start, the appropriate warning would be to warn users to never place their hands near the blades, just as Defendants did here.

Plaintiffs' arguments present a prototypical instance of requesting "a manufacturer to warn against dangers that may arise if the stated warnings are not heeded." *Davis*, 690 A.2d at 190. The manufacturer does not need to craft additional warnings that "are only useful if the current warning is 'blatantly ignored.'" *Makadji*, 2006 WL 3498324 at *3 (quoting *Davis*, 690 A.2d at 190).

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 24) is **GRANTED** in its entirety, and the case is **DISMISSED**.[4] Defendants' Motion to Exclude Dr.

---

[2] Because summary judgment would be granted even if Dr. Stichter's testimony was admitted, the Court does not find it necessary to reach Defendants' Daubert motion, and will assume, without deciding, that Dr. Stichter's testimony was admitted.

[3] Three of the four disputes that Plaintiffs attempt to posit as genuine disputes of material fact relate to the issue of a spontaneous start, and whether the snow thrower was truly turned off when Brewer was injured. *See* ECF No. 27 at 8. As discussed, these disputes are not material to the judgment. Plaintiffs' fourth purported dispute of fact (whether the warnings were sufficient) is a question of law. *See Phillips*, 665 A.2d at 1171 n.5.

[4] Plaintiffs also brought a loss of consortium claim, but that claim is entirely derivative, and "hinges on the success of the underlying claim of the spouse." *Balletta v. Spadoni*, 47 A.3d 183, 201 (Pa. Cmwlth. 2012). Since the underlying claim fails, so does the loss of consortium claim.

Stichter (ECF No. 23) and Defendants' Omnibus Motion in Limine (ECF No. 32) are **DENIED AS MOOT**.

                                                        **BY THE COURT:**

                                                        /s/ Chad F. Kenney

                                                        _____
                                                        **CHAD F. KENNEY, JUDGE**